LOCATION–CUSTODY

# Eastern District of Washington
## U.S. District Court (Yakima)
## CRIMINAL DOCKET FOR CASE #: 1:22–mj–04119–ACE–1

Case title: USA v. Davie                           Date Filed: 07/08/2022

Other court case number:  3:22–mj–05111 Western District of
                          Washington at Tacoma

---

Assigned to: Magistrate Judge
Alexander C Ekstrom

**Defendant (1)**

| | | |
|---|---|---|
| **Brian J. Davie** | represented by | **Federal Public Defender – YAK** |

represented by **Federal Public Defender – YAK**
Federal Defenders – YAK
Eastern Washington
306 East Chestnut Avenue
Yakima, WA 98901
Email: Alejandra_lozano@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Jennifer Rebecca Barnes**
Federal Defenders – YAK
Eastern Washington
306 East Chestnut Avenue
Yakima, WA 98901
509–248–8920
Email: jennifer_barnes@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

1

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| Counts 1–6 18:1344 = Bank Fraud; Counts 7–9 18:1028A(a)(1)= Aggravated Identity Theft | |

**Plaintiff**

| **USA** | represented by | **Matthew Alan Stone** |
|---|---|---|

U S Attorney's Office – YAK
402 E Yakima Avenue
Suite 210
Yakima, WA 98901–2760
509–454–4425
Email: USAWAE.mstoneecf@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/08/2022 | 1 | | RULE 5 DOCUMENTS RECEIVED from Western District of Washington at Tacome as to Brian J. Davie (1) (Attachments: # 1 Complaint for Violation, # 2 Arrest Warrant)(PH, Case Administrator) (Entered: 07/08/2022) |
| 07/08/2022 | 2 | | NOTICE OF HEARING – By Court (USM Action Required) as to Brian J. Davie (1). Text entry; no PDF attached. Initial Appearance – Rule 5 set for **7/11/2022** at **01:30 PM** in Yakima Courtroom 102 before Magistrate Judge Alexander C Ekstrom. (PH, Case Administrator) (Entered: 07/08/2022) |
| 07/08/2022 | 3 | | Charges and Penalties as to Brian J. Davie (1). (PH, Case Administrator) (Main Document 3 replaced on 7/11/2022 for file stamp flattening. (PH, Case Administrator). (Entered: 07/08/2022) |
| 07/11/2022 | 4 | | WAIVER of Rule 5 Hearings by Brian J. Davie (1) (Barnes, Jennifer) (Entered: 07/11/2022) |
| 07/11/2022 | 5 | | ASSERTION OF FIFTH AND SIXTH AMENDMENT RIGHTS by Brian J. Davie (1) (Barnes, Jennifer) (Entered: 07/11/2022) |

| 07/11/2022 | 6 | | ACKNOWLEDGMENT OF NOTICE OF RIGHTS by Brian J. Davie (1) (Barnes, Jennifer) (Entered: 07/11/2022) |
|---|---|---|---|
| 07/11/2022 | 8 | | ORDER APPOINTING FEDERAL DEFENDER as to Brian J. Davie (1). On the basis of the sworn financial statement, the Court finds Defendant is financially unable to retain counsel. IT IS ORDERED the Federal Defenders of Eastern Washington are appointed to represent Defendant pursuant to Title 18 United States Code Sec. 3006A. Text entry; no PDF document will issue. This text−only entry constitutes the Court Order on the matter. Signed by Magistrate Judge Alexander C Ekstrom. (KP, Law Clerk) (Entered: 07/11/2022) |
| 07/11/2022 | 9 | | Oral MOTION for Detention by USA as to Brian J. Davie (1). (PH, Case Administrator) (Entered: 07/11/2022) |
| 07/11/2022 | 10 | | Minute Entry for proceedings held before Magistrate Judge Alexander C Ekstrom: Initial Appearance in Rule 5 Proceedings and Detention Hearing as to Brian J. Davie (1) held on 7/11/2022. (Reported/Recorded by: Digital Recording/Y−102. Contact Court_Reporters@waed.uscourts.gov to order.) (PH, Case Administrator) (Entered: 07/11/2022) |
| 07/11/2022 | 11 | | ORDER OF REMOVAL (FED. R. CRIM. P. 5) **USM Action Required** as to Brian J. Davie (1); granting ECF No. 9 Oral Motion for Detention. Signed by Magistrate Judge Alexander C Ekstrom. (LTR, Case Administrator) (Entered: 07/11/2022) |

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 08, 2022

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  1:22-MJ-4119-ACE-1 |
| vs. | ) | |
| Brian J. Davie, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Received Rule 5 papers from the United States District Court,

Western District of Washington at Tacoma, Case Number 3:22-mj-05111.

_____ FILED _____ LODGED

_____ RECEIVED

Jun 30 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

The Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN J. DAVIE,<br><br>Defendant. | NO.  3:22-mj-05111<br><br>**COMPLAINT FOR VIOLATION**<br><br>Title 18 U.S.C. § 1344<br><br>Title 18, U.S.C. §1028A(a)(1) |

David. W. Christel

Before ~~Theresa L. Fricke~~, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNTS 1-6

### Bank Fraud

1.      Beginning at a time unknown, and continuing through on or about May 2019, in Clark County within the Western District of Washington, and elsewhere, BRIAN DAVIE ("DAVIE"), knowingly devised and executed a scheme and artifice to defraud a financial institution as defined in Title 18 U.S.C. § 1344, to obtain monies, funds, and credits under the custody and control of the financial institution by means of materially false and fraudulent pretenses, representations, and promises, as further and more particularly set forth below.

Complaint - 1
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### A.   The Scheme and Artifice to Defraud

2.     The essence of the scheme and artifice to defraud was for DAVIE to use his position as a Wells Fargo branch manager to gain access to victim accounts and to enrich himself through fraudulent withdrawals from those customer accounts.

3.     Through this scheme and artifice, DAVIE improperly accessed and used accounts of at least eight Wells Fargo accounts to perpetuate the fraud and enrich himself through unauthorized cash withdrawals, money transfers, and cashier's checks resulting in at least $1,048,966.08 in losses to Wells Fargo.

4.     At all times relevant to the allegations in this indictment, Wells Fargo met the definition of a financial institution set forth in Title 18, United States Code, Section 20 because their depository amounts were insured by the Federal Deposit Insurance Company.

### B.   The Manner and Means of the Scheme and Artifice

5.     It was part of the scheme and artifice to defraud that DAVIE performed fraudulent financial transactions using his ID and password while acting in the capacity of a bank teller. Wells Fargo branch managers are not permitted to perform teller transactions without permission, which DAVIE was not granted.

6.     It was further part of the scheme and artifice to defraud for DAVIE to instruct other tellers to conduct fraudulent transactions on his behalf. It was common for tellers to conduct transactions on behalf of DAVIE, so they were unaware that they were assisting with conducting fraudulent transactions.

7.     It was further part of the scheme and artifice to defraud for DAVIE to conduct fraudulent transactions using teller window computer terminals that a teller was already logged into with their teller ID and password so that it would appear that those transactions were not conducted by DAVIE.

8.     It was further part of the scheme and artifice to defraud for DAVIE to provide prefilled out customer transaction documents to tellers in order to fraudulently withdraw funds from customer accounts without that teller knowing.

Complaint - 2
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

9.      It was further part of the scheme and artifice to defraud for DAVIE to use a cash teller drawer that he opened to conduct fraudulent transactions.

10.     It was further part of the scheme and artifice to defraud for DAVIE to target vulnerable customers who were elderly and/or suffering from illnesses such as Alzheimer's or dementia because they were less likely to notice or report his fraud.

11.     It was further part of the scheme and artifice to defraud for DAVIE to use the known signatures of his customers to forge customer signatures on banking documents such as cashier's checks, withdrawal forms, and account closure forms.

12.     It was further part of the scheme and artifice to defraud for DAVIE to transfer money out of customer accounts using cash withdrawals and cashier's checks made payable to either Wells Fargo or businesses of other known customers.

13.     It was further part of the scheme and artifice to defraud for DAVIE to exchange cashier's checks for other smaller cashier's checks or cash withdrawals of $10,000 or less to avoid bank reporting requirements.

### C.     *Execution of the Scheme and Artifice to Defraud*

14.     On or about the dates identified below, in Clark County, within the Western District of Washington, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud a financial institution *and/or* for the purpose of carrying out and attempting to carry out this scheme and artifice to obtain monies, funds, and credits under the custody and control of the financial institution by means of materially false and fraudulent pretenses, representations and promises, DAVIE knowingly caused to be conducted the following transactions, with each transaction constituting a separate Count of this Complaint:

Complaint - 3
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| COUNT | DATE | FINANCIAL INSTITUTION | VICTIM | TRANSACTION |
|---|---|---|---|---|
| 1 | 04/11/2019 | Wells Fargo | K.C. | $8,000 cash withdrawal |
| 2 | 04/27/2019 | Wells Fargo | K.C. | $9,000 cash withdrawal |
| 3 | 08/16/2017 | Wells Fargo | P.T. | $9,000 cash withdrawal |
| 4 | 06/22/2018 | Wells Fargo | F.H. | $10,000 cash withdrawal and creation of a $40,000 cashier's check |
| 5 | 12/21/2018 | Wells Fargo | K.S. | $8,379.96 cash withdrawal & creation of a $20,000 cashier's check |
| 6 | 03/22/2019 | Wells Fargo | A.N. | $8,000 cash withdrawal and creation of a $2,169.89 cashier's check |

All in violation of Title 18, United States Code, Section 1344.

## **COUNTS 7-9**

### **(Aggravated Identity Theft)**

15. On or about the below dates, within the Western District of Washington, DAVIE did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person specified below—all of whom were real persons—during and in relation to the violations of Title 18, United States Code, Section 1344 charged in Counts 1- 6 and specified below:

| COUNT | DATE | RELATED COUNT | MEANS OF IDENTIFICATION |
|---|---|---|---|
| 7 | 04/11/2019 | 1 | K.C.'s account number, her Wells Fargo customer number, and a forged signature on a withdrawal slip from another customer with the initials N.S. |
| 8 | 12/21/2018 | 5 | J.F.'s account number, his Wells Fargo customer number, and J.F.'s forged signature to endorse a cashier's check. |
| 9 | 03/22/2019 | 6 | A.N.'s account number, her Wells Fargo customer number, and J.F.'s forged signature to endorse a cashier's check. |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

Complaint - 4
*United States v. Brian Davie*

2019R01062

1    And the complainant states that this Complaint is based on the following

2 information:

3    I, Michael D. Rollins, Special Agent with the FBI, being first duly sworn on oath,

4 depose and say:

## I.    AGENT BACKGROUND

6    1.    I am a Special Agent with Federal Bureau of Investigation ("FBI"), and

7 have been so employed since October 1999. I am currently assigned to the FBI's Seattle

8 Field Office's Vancouver Resident Agency. My duties and responsibilities include the

9 investigation of possible criminal violations of Title 18, United States Code, Section 656,

10 (Theft, embezzlement, or misapplication by bank officer or employee); Title 18 United

11 States Code, Section 1005 (Bank entries, reports, and transactions); Title 18 United States

12 Code, Section 1344 (Bank Fraud); and other related offenses.

13    2.    In the course of my employment with the FBI, I have conducted or been

14 involved in investigations of alleged criminal violations including: conspiring to defraud

15 the United States (18 U.S.C. §371); theft of trade Secrets (Title 18 U.S.C. § 1832); wire

16 and mail fraud (18 U.S.C. §1343 and §1341), theft or bribery concerning programs

17 receiving federal funds (Title 18 U.S.C. § 666), embezzlement and theft from Indian

18 tribal organizations (Title 18 U.S.C. § 1163), securities and commodities fraud (Title 18

19 U.S.C. § 1348), and others.

20    3.    I am familiar with the circumstances of the offenses described in this

21 affidavit through a combination of personal knowledge of the facts, discussion with other

22 law enforcement officials, investigative activities, and investigative materials obtained

23 during the investigation.

## II.    PURPOSE OF AFFIDAVIT

25    4.    I submit that probable cause exists to show that BRIAN DAVIE, while

26 serving as a Wells Fargo branch manager, committed the following offenses: bank fraud,

27 in violation of Title 18 U.S.C. § 1344, and aggravated identity theft, in violation of Title

28 18 U.S.C. § 1028A (the "Subject Offenses"). This affidavit does not include all the facts

Complaint - 5
*United States v. Brian Davie*

2019R01062

1 known to me, but rather contains facts sufficient to support the issuance of an arrest

2 warrant.

### III.    SUMMARY OF PROBABLE CAUSE

4 **Overview of Investigation**

5     5.     On July 19, 2019, Wells Fargo reported that DAVIE, a bank manager, stole

6 over $120,000 from one of their customers from their branch in Battle Ground,

7 Washington. Wells Fargo initiated an internal investigation into DAVIE in April 2019

8 based on a report that he may have conducted an inquiry of a vulnerable elderly

9 customer's account without an apparent business reason. Wells Fargo's internal

10 investigation determined that DAVIE stole money from the bank accounts of six elderly

11 customers. My investigation subsequently identified two additional elderly customers

12 whom DAVIE victimized. Collectively, DAVIE stole over $1,000,000 from the accounts

13 of these eight victims.

14     6.     According to Wells Fargo's internal investigation, DAVIE used his

15 authority and access to conduct transactions that were not authorized by customers while

16 serving as the Branch Manager at the Wells Fargo branch in Battle Ground, Washington.

17 According to one of DAVIE's employees, it would have been easy for DAVIE to

18 embezzle money from customers due to the high approval levels and access he had within

19 the banking system. His crimes went undetected for such an extended period because he

20 targeted accounts of elderly customers who were unlikely to track their account balances.

21 Based on DAVIE's role at the bank, the only way another employee would have known

22 that DAVIE was embezzling money was if a customer came into the bank and said they

23 were missing money.

24     7.     According to Wells Fargo's internal forensic review, DAVIE frequently

25 made withdrawals on the victim accounts using "known" as the form of the customer's

26

27

28

Complaint - 6
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

10

1  identification.[1] He hid his crimes, in part, by purchasing cashier's checks that were drawn
2  against the victims' accounts. He then conducted a series of transactions by exchanging
3  cashier's checks worth more than $10,000 for a combination of smaller cashier's checks
4  and cash withdrawals to avoid the reporting requirements under the Bank Secrecy Act.

5      8.      As a bank manager, DAVIE had access to the signatures of Wells Fargo
6  customers. Many of the cashier's checks that he authorized had signatures that resembled
7  the known signature of the victim, but interviews with the victims revealed that they had
8  never signed the check nor authorized the transaction. The checks would often be made
9  out to Wells Fargo or to individuals that the victim account holder did not know.

10      9.      DAVIE also made checks payable to his wife's stepfather, with the initials
11  J.M., his company, or a company that resembled his company's name. J.M. did not
12  recognize any of the check's that had been made payable to him or his business. He
13  stated that he did not endorse those checks and that the signature on the checks must be
14  forged.

15      10.    During DAVIE's interview with a Wells Fargo investigator, DAVIE
16  admitted that he had opened J.M.'s business accounts. He said that he had not seen him in
17  a while. DAVIE denied having a personal relationship with J.M. even though J.M. was
18  his wife's stepfather. The bank investigator asked DAVIE if J.M. was a known bank
19  customer and DAVIE replied that he probably processed transactions for him as known.
20  DAVIE was asked if there was a relationship with J.M. and Wells Fargo customer with
21  the initials K.C. DAVIE said he was not sure. DAVIE could not provide an explanation
22  as to why checks that were drawn against K.C.'s account were made payable to J.M.'s
23  business, Mammoth Properties LLC ("Mammoth").

24

25

26  ---
27  [1] From training and experience, I know that bank employees conducting services that require confirmation will record how they confirmed the customer's identification. For example, if using the customer's driver's license, the employee will include the license number in bank records. When a bank employee records 'known' as the form of identification, the employee is representing that the customer did not provide any form of identification because the particular customer is known to the employee.
28

Complaint - 7
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

11.     When I interviewed DAVIE on January 12, 2022, he said that he was the Battle Ground Wells Fargo Branch Manager from approximately March 2014 until he was terminated for unexplained reasons. When I asked him why he gave J.M. a personal loan totaling over $50,000, he responded that he did not know what I was talking about. He said that he never gave anyone a personal loan. This is contradicted by J.M. who previously told me that DAVIE personally loaned him approximately $60,000. When I asked DAVIE if he ever conducted transactions against customers' accounts without their approval, he replied that he did not know what I was talking about.

12.     A Wells Fargo investigator reported reviewing several hours of closed circuit television ("CCTV") video footage from the Wells Fargo branch in Battle Ground, Washington. The footage revealed DAVIE completing transactions from his office computer while customer K.C. was not present in the bank. During the investigator's interview, DAVIE stated that customers always had to be present to conduct transactions and that he could only think of an exception being made for a disabled customer who was unable to come to the branch. DAVIE also mentioned a case where a well-known customer was able to conduct a wire transaction by phone, but this required the district manager's approval.

13.     According to the Wells Fargo investigator, when DAVIE performed the unauthorized transactions, he used his user ID and password while acting in the capacity of a bank teller. Bank managers are not permitted to perform such transactions without obtaining the permission of the district manager. Wells Fargo terminated DAVIE, in part, for operating a teller drawer without approval.

14.     Through interviews of various Wells Fargo employees who worked at the branch for DAVIE, I learned the following that demonstrate DAVIE's access and opportunity to conduct the fraudulent transactions:

        a.      DAVIE frequently asked tellers to conduct teller withdrawal transactions against customer's accounts without the customer being present at the teller counter. In his interview with the bank investigator, DAVIE admitted that he occasionally

Complaint - 8
*United States v. Brian Davie*
2019R01062

1   processed teller transactions, but he said it was rare for a manager to run transactions and
2   that it was done only when absolutely necessary.

3          b.      Whenever a branch employee conducted a transaction on behalf of a
4   customer for DAVIE, they had no reason to believe that the customer was not in his
5   office. Some former employees told me that they conducted such transactions for him
6   when he said the customer was in his office and sometimes when he said the customer
7   was not at the branch, but that they were going to come back to retrieve the transaction.
8   J.W.[2] told me that if his office door was open, you could see him but you could not see if
9   there was a customer in his office. Therefore, they would not know if he asked them to
10  conduct a fraudulent transaction when a customer was not present in his office.

11         c.      J.S.[3] and H.C.[4] told me that DAVIE used teller window computer
12  terminals that a teller was already logged into with the teller's credentials to conduct
13  transactions. H.C. said that DAVIE asked to use her 'logged-in' teller station a couple of
14  times. H.C. related that DAVIE usually mentioned that he had to approve the transaction
15  either way; therefore, he would just take care of conducting the transaction himself. At
16  times, DAVIE asked H.C. to assist him with completing the transaction that he was
17  conducting at her station by counting out the cash withdrawal amount or to do whatever
18  else he needed to complete the transaction. H.C. said that if it was a smaller withdrawal
19  amount DAVIE personally withdrew the money from her teller cash drawer. For larger
20  transactions, each teller had a "cashbox" in the back safe area. Whenever DAVIE
21  conducted a cash transaction above the amount that H.C. had in her drawer, she retrieved
22  the money from her cashbox to complete the transaction. H.C. said DAVIE also asked
23  other tellers to use their logged in teller computer station. Based on my training and

24

25  _____

26  [2] J.W. worked as both a teller and lead teller at the Wells Fargo branch in Battle Ground Bank from approximately January 2017 to March 2018.
    [3] J.S. was employed as a teller, personal banker, and eventually as a service manager at the Wells Fargo branch in Battle Ground
27  from January 31, 2017, to June 2021. DAVIE was Sharp's supervisor the entire time.
    [4] H.C. was a teller and personal banker at the Battle Ground Bank branch from June 2015 to August 2016. DAVIE was the
28  branch manager and her immediate supervisor.  On or about August 2016, H.C. was terminated by Wells Fargo for embezzling
    $415.41. She confessed to stealing the money from another employee's cash drawer.

Complaint - 9
*United States v. Brian Davie*

2019R01062

1   experience, I believe DAVIE did this to hide that he was conducting the transactions

2   against a customer's account.

3           d.      DAVIE provided completed withdrawal slips to tellers to withdraw

4   cash and issue cashier's checks from customer accounts. DAVIE instructed tellers to

5   enter "known" or "per DAVIE" as the customer's presented form of identification to

6   complete the transactions. When the transaction was concluded, DAVIE took the

7   proceeds of the transaction back to his office.

8           e.      According to Wells Fargo, DAVIE had his own cash drawer and ran

9   teller transactions for multiple customers.

10          f.      Cashier's checks cannot be issued without a teller entering their

11  personal password. Wells Fargo charges a fee for the issuance of a cashier's check.

12  DAVIE often waived that charge for customers. Once a cashier's check was issued, the

13  funds are withdrawn from the customer's account and transferred into a specific Wells

14  Fargo owned account. The teller transaction system required the entry of an account

15  number whenever a transaction was conducted for a customer. An existing customer

16  might request the cashier's check be payable to Wells Fargo if the customer was making a

17  payment to the bank for things like a credit card or loan payment. According to J.C.,[5]

18  however, it would be a huge red flag if a teller disbursed cash for a cashier's check that is

19  payable to Wells Fargo. According to a Wells Fargo investigator, cashier's checks

20  payable to the bank should never be transacted for cash because the bank is the payee, but

21  Wells Fargo's system would not block such a transaction. It is incumbent upon the teller

22  to appropriately conduct transactions.

23      15.     On June 7, 2019, bank investigators interviewed DAVIE and he denied any

24  involvement in conducting the unauthorized transactions. He claimed he must have made

25

26  _____

27  [5] J.C. advised me that she was employed as a Lead Teller at the Wells Fargo branch in Battle Ground from approximately
    October 2014 to May 2016. J.C. previously worked as a teller at another branch in the district for two years. J.C. transferred out
28  of the Battle Ground branch after being promoted. J.C. has not worked in a branch since approximately 2018. J.C. said that in
    approximately July 2018, she was terminated by the Bank for an unspecified performance related matter.

Complaint - 10
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a mistake in processing the transactions. Wells Fargo subsequently terminated DAVIE's employment. Wells Fargo deemed DAVIE violated the following bank policies: conducted customer transactions without their presence and identification; accessed customer accounts with no business reason; and operated a cash drawer without authority.

**A.  Victim K.C.**

16.  K.C. was unaware that Davie had fraudulently stolen money from her retirement accounts until she was interviewed by law enforcement. In September 2019, a Battle Ground Police Officer and a Washington State Department of Social and Health Service/Adult Protective Service ("APS") caseworker interviewed K.C. about potentially fraudulent activity on her accounts. K.C. told the interviewers that she walked or rode the bus to Wells Fargo in Battle Ground, Washington, to withdraw money from her account once a week. K.C.'s daughter, T.L., managed her accounts. According to T.L, K.C. never withdrew more than $400 out of her account at any given time. K.C. used the money to buy food and other household items. T.L. set-up "auto pay" to pay all of her bills because K.C. did not know how to take care of her finances. K.C. was born in Japan in 1934. She does not know how to use a computer and she could not recall how much money she had in her bank accounts nor how many accounts she owned.

17.  T.L. told law enforcement that she believed her mother suffered from dementia, but K.C. had not been formally diagnosed because she refused to go to the doctor.[6] According to T.L., K.C. walked to various banks to close and re-open her bank accounts several times in 2016 because she thought T.L. was stealing her money. At that

---

[6] Prior to the interview, the APS caseworker administered a "mini mental status test" on K.C. who got only 19 of the 30 questions correct indicating possible cognitive impairment. Based on this test, however, the case worker was unable to determine whether K.C. suffers from memory loss or the onset of dementia. The interviewing officer asked K.C. several questions to determine her cognitive abilities, such as: Who is the president of the United States? What day is it? and What month is it? K.C. was unable to provide the correct answer to any of the questions.

point, T.L. had K.C. make her a co-signer on K.C.'s various accounts. During that time, T.L. set-up an "auto pay" at Chase Bank to pay K.C.'s bills.

18. According to bank records, on August 2, 2016, T.L. and K.C. went to the Wells Fargo branch in Battle Ground and met with the branch manager DAVIE. DAVIE assisted them with setting T.L. up as a co-signer on K.C.'s accounts, including a high yield savings account ending in account number 7968 and a prime checking account ending in account number 7451.

19. Two days later, DAVIE closed the two accounts that had included T.L. as a co-signer. The combined closing account balances totaled approximately $518,647.62. He then opened the following sole owner accounts for K.C. without authorization: K.C.'s portfolio checking account ending in 6981, a platinum savings account ending in 2470, and a $300,000 certificate of deposit ("CD") account ending in 8839. The last withdrawal from the CD account was conducted on November 29, 2018. The original maturity date for the account was June 4, 2021. According to the bank's internal review, the signature on the closure forms do not match K.C.'s known signature. Even though T.L. had been made a co-signer to K.C.'s original accounts, she did not know that any of these changes were made to the account. T.L. later learned that DAVIE never processed the paperwork to add T.L. as a co-signer to K.C.'s accounts.

20. On or about September 13, 2016, DAVIE processed the opening of K.C.'s preferred checking account ending in 8676. K.C. was the sole owner of the account. The account application listed K.C.'s address as the Wells Fargo Battle Ground branch location. Again, T.L. was unaware of this account being opened.

21. On June 7, 2019, bank investigators telephonically interviewed DAVIE. DAVIE admitted that using a branch address as a customer address was allowed only under exceptional circumstances. He claimed that he had never authorized the use of a bank address. According to bank records, DAVIE opened K.C.'s portfolio checking and platinum checking accounts listed above and later changed the address to the Wells Fargo's Battle Ground branch location.

Complaint - 12
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Counts 1 & 7 - Unauthorized $8,000 cash withdrawal on April 11, 2019**

22.     On April 11, 2019, at approximately 2:29 PM, DAVIE accessed K.C.'s account; however, he did not conduct an $8,000 cash withdrawal from her savings account ending in 2470, until approximately 4:19 PM. The transaction was conducted via withdrawal slip 4165. K.C.'s name was handwritten on the slip; however, the signature appeared to be Wells Fargo customer N.S.'s signature. The bank reported that earlier that afternoon DAVIE assisted with issuing a cashier's check from N.S.'s personal account and making a deposit into his business account.

23.     According to DAVIE's teller journal report, he used K.C.'s account number ending in 2470, her Wells Fargo customer number, and "known" as the customer's provided form of identification to conduct this transaction. Wells Fargo reported the signature on file for N.S. "appears to be a favorable match" to the signature on the withdrawal slip. The bank reported that there was no apparent reason for DAVIE to conduct teller transactions.

24.     N.S. told me that he does not know K.C. He said that the signature on the slip resembled his signature; however, he did not sign it. N.S. said that the signature must be forged because the withdrawal amount is a lot of money, and the account does not belong to him.

25.     A Wells Fargo investigator reviewed the CCTV footage[7] from that date, and K.C. was never seen in any of the CCTV footage in the time period where DAVIE accessed and withdrew the cash from her account.

---

[7] According to a bank investigator, the CCTV footage provides a view of the customer lobby waiting area, DAVIE's office door, several of the banker's cubicles, and an overview of the teller line. The footage did not capture the drive thru, but according to T.L., K.C. stopped driving 11 years ago when she moved to Washington. She only commutes by bus or walking. In DAVIE's interview, he confirmed that K.C. would usually come to the bank by bus.

Complaint - 13
*United States v. Brian Davie*
2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### Count 2 - Unauthorized $9,000 cash withdrawal on April 27, 2019

26.     According to bank records, DAVIE accessed K.C.'s account on April 27, 2019, at approximately 11:45 AM; however, he did not complete a $9,000 cash withdrawal from her savings account ending in 2470 until approximately 12:24 PM. The transaction was conducted via withdrawal slip 9084. K.C.'s name was handwritten on the slip; however, the signature appeared to be N.S.'s signature.

27.     CCTV footage from that date shows DAVIE walking to the teller line carrying what appeared to be a folder. DAVIE then goes to a teller station with no customer present. According to DAVIE's teller journal report, DAVIE processed this cash withdrawal from K.C.'s savings account using her account number ending in 2470, her customer number, and known as the customer's provided form of identification.

28.     After withdrawing the funds from K.C.'s account, DAVIE returned to his office. According to a Wells Fargo investigator, the signature on file for N.S. "appears to be a favorable match" to the signature on the withdrawal slip. When I questioned N.S. about this slip, he reiterated that he does not know K.C. After showing N.S. a copy of the withdrawal slip, he stated that the signature on the slip resembled his signature, but he did not sign it. N.S. stated that someone must have forged his signature or placed his digital signature onto the slip without his authorization. As the bank branch manager, DAVIE had access to various records that contained customer's signatures, including N.S.

29.     During an interview conducted by a Wells Fargo investigator, DAVIE said he normally assisted K.C. when she came in the branch and she waited for him. DAVIE said he was not surprised if he helped K.C. with teller transactions because they were short staffed. K.C. was a regular customer; therefore, DAVIE said he would not have gotten her identification. DAVIE said that K.C. was always present at the bank when he conducted transactions on her behalf. DAVIE did not know why K.C. was not captured on the bank branch's CCTV footage.

Complaint - 14
*United States v. Brian Davie*
2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

18

30.     When the Wells Fargo investigator asked DAVIE about the April 27, 2019, transaction in which N.S. signed K.C.'s withdrawal slip, DAVIE related the following: N.S was a well-known customer. He came in the bank almost daily and DAVIE helped him all the time. DAVIE conducted all of his transactions, including loans, credit cards, and financial accounts. N.S. was in his 80's and DAVIE knew his whole life story.

31.     DAVIE claimed that N.S. signing K.C.'s withdrawal slip was an error. DAVIE admitted that such errors don't happen very often. When the Wells Fargo investigator asked DAVIE how this happened more than once with the same customers in the same month, he responded that he did not like the questions he was being asked.

32.     The bank identified an unspecified number of unauthorized transactions from K.C.'s accounts. They subsequently paid her $546,757.62 for the losses she incurred. All of the unauthorized transactions were either conducted by or authorized by DAVIE.

**B.     Victim P.T.**

33.     P.T. moved to Battle Ground, Washington in approximately 2014 or 2015. She was nearly 70 years old, and her ex-husband had handled all of their finances before she moved. DAVIE helped her open financial accounts when she first came to the bank. Since then, she always went to DAVIE for help with her bank accounts and she relied on him for financial guidance. She said that she did not review her accounts because she felt like she had enough to sustain her lifestyle, but she began to wonder where all of her money went. She said that the money "just disappeared."

**Count 3 - Unauthorized $9,000 cash withdrawal on August 16, 2017**

34.     According to bank records, on August 16, 2017, $9,000 in cash was withdrawn from P.T.'s checking account ending in 6631. The transaction was conducted via withdrawal slip 4230. DAVIE conducted the transaction using P.T's account number ending in 6631 and her Wells Fargo customer number. DAVIE used "known" as the

Complaint - 15
*United States v. Brian Davie*
2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

19

1 customer's provided form of identification. After I showed P.T. a copy of the slip, she

2 said the handwriting on the slip is not her handwriting and that the signature does not

3 resemble her signature. She said that she would not have withdrawn this much money in

4 cash.

5      35.     Wells Fargo reported that they received a complaint from P.T. that multiple

6 transactions were conducted on her accounts that were not conducted by her and that she

7 did not authorize. A review of their records indicated DAVIE processed an unspecified

8 number of unauthorized withdrawals from her account resulting in Wells Fargo incurring

9 a loss of $154,973.84. P.T. told me that she received a $154,973.84 settlement payment

10 from Wells Fargo. All of the unauthorized transactions were either conducted by or

11 authorized by DAVIE.

12

13 **C.**    **Victim F.H.**

14      36.     According to F.H.'s niece, D.S., F.H. suffers from dementia. F.H. was born

15 in 1931. In April 2018, F.H. scored only 14 out of 30 points on a cognitive test indicating

16 that he suffers from dementia.

17      37.     D.S. told me that sometime in early 2017, F.H. appointed D.S. as his

18 general power of attorney-in-fact. Later that year, S.H., assumed the role of F.H.'s

19 attorney-in-fact. F.H. lives in Battle Ground, Washington, with his niece C.B. D.S., C.B.,

20 and S.H. advised me that F.H. was unable to be interviewed due to his cognitive decline.

21 S.H. provided me a copy of a doctor's order from September 2017 stating that F.H. was

22 no longer legally able to operate a vehicle or live independently, due to memory loss.

23      38.     M.A. advised me that she was a teller at the Battle Ground branch from

24 approximately September 2016 to May 2019. F.H. was a branch customer that DAVIE

25 primarily assisted. DAVIE knew that F.H. suffered from dementia and told M.A. that he

26 needed to lookout for F.H.

27

28

Complaint - 16
*United States v. Brian Davie*
2019R01062

### Count 4 - Unauthorized $10,000 cash withdrawal and issuance of a $40,000 cashier's check on June 22, 2018

39.     According to bank records, DAVIE withdrew $50,000 from F.H.'s checking account ending in 4782 and issued a cashier's check ending in 2186 for the same amount on May 29, 2018. DAVIE created the following banker note about the transaction: "F.H.[8] mailed withdrawal ticket to the branch requesting a cashier's check mailed to him for 50k I called customer to verify this and he did approve known customer." The remitter[9] on the check was listed as "NONE." The payee was listed as "WELLS FARGO BANK." DAVIE's teller journal report noted that he conducted the transactions using "known" as the customer's provided form of identification. The check was endorsed with a signature that J.M. told me resembled his signature, but he did not sign it. Written below the signature is the note: "not used purpose [sic] intended."[10]

40.     According to bank records, on June 22, 2018, DAVIE exchanged this check for $10,000 in cash and issued a $40,000 cashier's check ending in 2201. As previously mentioned, cashier's checks payable to the bank should never be transacted for cash because the bank is the payee. On the $40,000 check (2201), DAVIE changed the payee from Wells Fargo to Mammoth. Despite the funds originating from F.H.'s account, Mammoth was also listed as the remitter of the check.

41.     DAVIE's teller journal report indicated that he conducted these transactions using Mammoth's business account number ending in 1369.[11] DAVIE used "known" as the customer's provided form of identification, and a Wells Fargo customer number assigned to Mammoth.

---

[8] The note only included the last name, which was changed to initials here to protect the victim's identity.
[9] The remitter is the person who paid for the cashier's check.
[10] From training and experience, I know that when a cashier's check is not used as planned and the purchaser would like to receive the funds back, the cashier's check is endorsed as not used for purposes intended, followed by the purchaser's/remitter's signature. Banks then credit the funds back to the purchaser's/remitter's account.
[11] DAVIE opened this account on June 22, 2018. J.M. and his wife were listed as signers on the account. J.M. said he authorized the opening of this account.

Complaint - 17
*United States v. Brian Davie*

2019R01062

42.     I showed J.M. a copy of the $50,000 check (2186). J.M. stated that the endorsement signature on the check resembled his signature, but he did not sign the check. J.M. said that he does not know F.H. and has no business affiliations with him.

43.     According to bank records, the remaining outstanding funds were disbursed as follows:

a.     On July 3, 2018, M.A. exchanged the $40,000 cashier's check (2201) for $10,000 in cash and a $30,000 cashier's check ending in 2216 payable to Mammoth. Despite the funds originating from F.H.'s account, the remitter on the new $30,000 check (2216) was Mammoth. DAVIE approved the issuance of the new check. The $40,000 check (2201) was endorsed with Mammoth Property Solutions LLC handwritten in the endorsement section followed by a signature. J.M stated that though the signature on the check resembled his signature, he did not sign the check. M.A said she could not recall cashing and exchanging the $40,000 cashier's check (2201), but she believes DAVIE asked her to conduct the transaction on behalf of a customer. According to M.A., the handwritten endorsement on the check looked like DAVIE's handwriting.

b.     On July 11, 2018, DAVIE exchanged the $30,000 check (2216) for $5,000 in cash and a $25,000 cashier's check ending in 2228 payable to Mammoth. Mammoth remained the remitter. The new check was issued and approved by DAVIE. DAVIE conducted the transaction using Mammoth's account number and "known" as the customer's provided form of identification. The check was endorsed with Mammoth Property Solutions LLC handwritten in the endorsement section followed by a signature. J.M. stated that the signature on the check resembled his signature, but he did not sign the check.

c.     On July 18, 2018, M.A. exchanged the $25,000 check (2228) for $10,000 in cash and a $15,000 cashier's check ending in 2231 payable to Mammoth. Mammoth remained the remitter on the new check. DAVIE approved the issuance of the new check. The $25,000 (2228) check was endorsed with Mammoth Property Solutions LLC handwritten in the endorsement section followed by a signature. J.M. stated that the

Complaint - 18
*United States v. Brian Davie*
2019R01062

signature on the check resembled his signature, but he did not sign the check. M.A. did not recall cashing and exchanging the $25,000 cashier's check (2228), but she believed DAVIE asked her to conduct the transaction because it would have required them to get the $10,000 in cash from the bank's vault, and she would have needed his approval to issue the $15,000 check (2231). According to M.A., the handwritten endorsement on the check resembled DAVIE's handwriting.

   d. On July 26, 2018, Battle Ground Wells Fargo branch Service Manager A.S. deposited the $15,000 cashier's check (2231) into J.M.'s business account ending in 1369. The check was endorsed with a bank deposit stamp. J.M. stated that he did not authorize nor conduct the deposit transaction into his account.

  44. The bank reported that from approximately May 9, 2017, to May 29, 2018, it appeared that DAVIE conducted several unauthorized withdrawals from F.H.'s accounts totaling $157,463.81. DAVIE's pattern of activity included withdrawals that were followed by cashier's checks that were exchanged multiple times.

  45. S.H. told me that Wells Fargo only allowed him to file a claim for losses on F.H.'s behalf for the period when he became F.H.'s attorney in fact. On October 8, 2020, the bank credited F.H.'s account $85,000 for the losses he incurred. All of the unauthorized transactions were either conducted by or authorized by DAVIE.

## D. Victim K.S.

  46. K.S was born in Korea in 1944 and moved to the United States in 1970. She has difficulty understanding English. K.S. stated that she does not review her bank statements because she does not understand them. She does not use personal checks because she does not know how to issue them. She pays for any expenses with either cash or a credit card. She pays her Wells Fargo credit card bill by going to the Battle Ground bank branch to transfer money from her Wells Fargo account to pay her credit card balance.

Complaint - 19
*United States v. Brian Davie*
2019R01062

**Counts 5 & 8 - Unauthorized $8,379.96 cash withdrawal and issuance of a $20,000 cashier's check on December 21, 2018**

47.     K.S. told me that she used to have three Wells Fargo certificate of deposit ("CD") accounts. She was the sole account owner of the accounts. In 2018 or 2019, K.S. went to the Battle Ground bank branch to move the outstanding balance from her smallest CD account into a larger existing CD account. Her smallest CD account had a balance of approximately $20,000 to $30,000. A female employee that usually assisted her was on vacation at the time. An unknown male employee offered to assist her with transferring the balance into her other existing CD account.

48.     I showed K.S. a nondescript photograph of DAVIE's Washington State driver's license picture. K.S. told me that the individual depicted in the picture looked like the male that assisted her. This was the only time that he conducted a transaction for her. K.S. assumed he moved the balance of her CD account as she requested. In approximately June 2019, K.S. inquired at the Battle Ground bank branch where that male was and an employee informed her that he no longer worked there. According to bank records, Davie closed a CD account ending in 8243 owned by K.S. on December 10, 2018. K.S. stated that she signed the CD withdrawal slip that indicated the $28,379.96 in the account were to be disbursed to "Checking or Savings," but she does not know what happened to the funds.

49.     The withdrawal resulted in the issuance of a $28,379.96 cashier's check ending in 2364 payable to Wells Fargo. K.S. was listed as the remitter on the check. According to the operator identification numbers on the check, J.S. issued and approved the cashier's check, but the authorized bank employee signature resembled DAVIE's signature.

50.     According to J.S., DAVIE asked her to issue the check. At that time, J.S.'s monetary transactional approval authority limit was $750,000. Therefore, she would have been able to sign the check as the authorized signer and would not have needed DAVIE's signature. J.S. told me that she did whatever DAVIE asked her and that she did not

Complaint - 20
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

24

question his authority. She related that she does not know how this check could have been subsequently cashed out with the depicted endorsement signature; since, the check was payable to Wells Fargo. The check cannot be endorsed by anyone but the designated payee or the remitter. As previously mentioned, cashier's checks payable to the bank should never be transacted for cash because the bank is the payee.

51.     After I showed K.S. a copy of the $28,379.96 check (2364), she stated that she had never seen this check. She does not know why the check was made out to Wells Fargo. She did not provide this check to anyone and she did not recognize the endorsement signature.

52.     According to Wells Fargo bank records, on December 21, 2018, DAVIE cashed out this check (2364) by withdrawing $8,379.96 in cash and issuing a $20,000 cashier's check ending in 2380 payable to Farmer Construction. The remitter was changed to Wells Fargo customer J.F. DAVIE conducted these transactions using J.F.'s account number ending in 0735, his Wells Fargo customer ID number, and "known" as the customer's provided form of identification.

53.     According to J.F., the endorsement signature on the check closely resembled his signature, but he did not sign it. J.F. said he had never seen this cashier's check before and he does not know K.S.

54.     J.F. said that he knew DAVIE via a mutual friend and that he had a social relationship with DAVIE. J.F. identified DAVIE through his Washington State driver's license photo. J.F. said that he went to the Wells Fargo branch in Battle Ground multiple times to sign paperwork that DAVIE assisted him with completing to obtain a business license, amongst other associated paperwork. J.F. stated that DAVIE had documents that contained his signature; therefore, DAVIE knew what his signature looked like.

55.     According to bank records, on December 26, 2018, DAVIE exchanged the $20,000 check (2380) by withdrawing $8,000 in cash and issuing and approving a new cashier's check ending in 2382 for $12,000 payable to Farmer Construction. The $20,000 check (2380) was endorsed with a signature with "not used purpose" written below it.

Complaint - 21
*United States v. Brian Davie*
2019R01062

1   K.S. told me that she did not recognize the endorsement signature, and the handwriting
2   below the endorsement signature was not her handwriting. J.F. told me that he did not
3   remit nor sign the check. The handwriting below the endorsement did not resemble his
4   handwriting. J.F. added that he had no affiliation with nor had he ever heard of Farmer
5   Construction. DAVIE conducted these transactions using J.F.'s account number ending in
6   0735, J.F.'s Wells Fargo customer number, and "known" as the customer's provided
7   form of identification.

8        56.     According to bank records, the remaining outstanding funds were disbursed
9   as follows:

10        a.     On January 2, 2019, M.A. exchanged the $12,000 check (2382) for
11   $8,000 in cash and a $4,000 cashier's check ending in 2675. The check was endorsed
12   with a signature and handwritten below the signature was, "Not used Purpose." K.S. told
13   me that she did not recognize the endorsement signature and that the handwriting below
14   the endorsement signature was not her handwriting. J.F. told me that he did not authorize
15   the remittance nor cashing of this check (2382). He also said that neither the signature nor
16   the handwriting below the signature was his handwriting. J.F. told me that he had never
17   seen this check before. DAVIE approved the issuance of the new check. M.A. said that
18   she believes that she conducted this transaction at DAVIE's request.

19        b.     On January 11, 2019, DAVIE cashed out the $4,000 check (2675)
20   with no associated account number, no customer number, and known as the customer's
21   provided form of identification. The check was endorsed with a signature. K.S. told me
22   that she did not recognize the signature. J.F. told me that the endorsement signature
23   resembled his signature style, but he did not sign the check. He neither authorized the
24   remittance nor cashing of this check.

25        57.     Wells Fargo reported that K.S. filed a claim for the unauthorized
26   withdrawal that DAVIE conducted from her CD account. Wells Fargo reimbursed K.S.
27   the total amount of the withdrawal, plus interest of $11.55, bringing the total to
28   $28,391.51.

Complaint - 22
*United States v. Brian Davie*
2019R01062

**E.    Victim A.N.**

58.    A.N. was born in 1943 and she resides in Clark County. A.N. told me that she primarily banked at the Wells Fargo branch in Battle Ground, Washington. Whenever she went to the bank, DAVIE made a point to talk to her regardless of where she was standing in the teller line. A.N. always went to DAVIE whenever she needed to conduct a large transaction or to transfer money between her accounts. A.N. waited in DAVIE's cubicle whenever he conducted large transactions on her behalf. DAVIE initially made entries on his computer and then left to go to the teller area. There were times that he was gone for an extended period of time. When DAVIE returned, A.N. would ask him to provide her the transaction slip. DAVIE told her not to worry about it and that he cannot print it out but that she will see it on her account statement. She described their relationship as "buddies."

**Counts 6 & 9 - Unauthorized $8,000 cash withdrawal and issuance of a $2,169.89 cashier's check on March 22, 2019**

59.    According to bank records, on March 19, 2019, M.A. issued a $10,169.89 cashier's check ending in 2443 from A.N.'s account. DAVIE approved the issuance of the check. The payee was listed as "WELLS FARGO BANK." A.N. was listed as the remitter. The check was endorsed with a signature and handwritten above the signature was, "Not Used For Purpose Intended." The transaction was conducted using A.N.'s account ending in 4001, her Wells Fargo customer number, and "known" was used as the customer's provided form of identification.

60.    M.A. told me that she could not recall issuing this cashier's check (2443). She believes that she completed this transaction at DAVIE's request or he did it himself from her logged in teller station. M.A. said the handwritten endorsement on the check is "definitely" DAVIE's handwriting.

Complaint - 23
*United States v. Brian Davie*
2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

61.     A.N. told me that she did not authorize the issuance of the cashier's check (2443). She never obtained a cashier's check made payable to Wells Fargo. She does not know why a cashier's check would be endorsed as not used for purpose intended. A.N. did not recognize the endorsement signature nor was she able to make out the handwriting.

62.     J.F. told me that the endorsement signature on the check (2443) kind of resembled his signature but the handwriting above the signature did not look like his handwriting. J.F. did not endorse, nor has he ever seen this check (2443) before.

63.     On March 22, 2019, DAVIE exchanged the $10,169.89 cashier's check (2443) for $8,000 in cash and issued a $2,169.89 cashier's check ending in 1874. The check (1874) was made payable to "WELLS FARGO BANK." A.N. was listed as the remitter of the check (1874).  DAVIE used A.N.'s account number ending in 4001, her Wells Fargo customer number, and "known" as the customer's form of provided identification to conduct this transaction.

64.     M.A. told me that the $10,169.89 cashier's check (2443) check should not have been cashed because the endorsement signature did not resemble the first letter of the remitter's name. The funds should have been re-deposited into the remitter's account. She said this check could not have been further transacted because the handwritten endorsement verbiage voided the check.

65.      A.N. told me that she did not exchange check 2443 for $8,000 in cash and for a $2,169.89 cashier's check (1874).

66.     On March 28, 2019, DAVIE cashed out the $2,169.89 cashier's check (1874) without it being endorsed. The transaction was conducted using no associated account number, no customer number, and "known" as the customer's provided form of identification. A.N. told me that she did not authorize this cashier's check (1874). She reiterated that she never obtained a cashier's check made payable to Wells Fargo.

67.     Wells Fargo reported that they incurred a loss of $107,170.08 due to the unauthorized withdrawals DAVIE conducted or approved from A.N.'s accounts. The

Complaint - 24
*United States v. Brian Davie*

2019R01062

transactions were conducted between November 7, 2014, and July 19, 2017. The bank reported DAVIE conducted most of the transactions, which included purchased cashier's checks payable to Wells Fargo that were later exchanged and cashed. Two other Wells Fargo customers' profiles were used to disguise the transactions.

68. On June 15, 2022, A.N. told me Wells Fargo credited her account with $103,551.95 because of the unauthorized transactions that were conducted from her accounts.

## Defendant's Interview and Response to the Allegations

69. On January 12, 2022, I confronted DAVIE at his residence about the unauthorized transactions that he conducted from various Wells Fargo customers' accounts. He said he had no idea what I was talking about. When I asked him whether he conducted such transactions against K.C.'s account he denied knowing K.C. Later in the interview, upon showing him a $300,000 cashier's check, dated August 4, 2016, he said, that the check was used to open a CD account for K.C.

70. Later that evening and the following day, DAVIE exchanged text messages with his teenage daughter. In part, he texted her: "They [FBI] got nothing out of me…" He also confronted her about how the FBI knew where he lived because "nothing goes here not even my work knows only people are you and grandpa and I know grandpa didn't say [expletive]!"

71. On April 8, 2022, I emailed DAVIE a target letter from the United States Attorney's Office. That same day, DAVIE told his daughter that he needed to talk to her about something and that he was planning on fleeing the country. On April 25, 2022, DAVIE's ex-wife told me that the weekend of April 23 and 24, 2022, DAVIE sent multiple text messages to his daughter in which he claimed that he was going to leave the country on April 29, 2022. He told her that if she wanted to go with him, this was her last chance. The target letter had a deadline of April 28, 2022.

Complaint - 25
*United States v. Brian Davie*

2019R01062

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

72.     Based on my training and experience, DAVIE's communications with his daughter are an indicator of his guilty conscience and that he took steps to attempt to allude law enforcement from locating him. His communications also indicate that he will attempt to avoid being apprehended by fleeing the country.

## IV.    CONCLUSION

Based on the above facts, I respectfully submit that there is probable cause to believe that BRIAN DAVIE did knowingly and intentionally commit the crimes of Bank Fraud in violation of Title 18, United States Code, Section 1344 and Aggravated Identity Theft in violation of Title 18, United States Code, Section 1028A(a)(1).


Michael D. Rollins, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit presented by reliable electronic means and sworn to me, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated June 30, 2022


~~Theresa L. Fricke~~ David W. Christel
United States Magistrate Judge

Complaint - 26
*United States v. Brian Davie*
*2019R01062*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

United States of America
v.
Brian J. Davie

*Defendant*

)
)
)
)
)
)

Case No. 3:22-mj-05111

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Brian J. Davie                                                                                                                              ,
who is accused of an offense or violation based on the following document filed with the court:

❒ Indictment          ❒ Superseding Indictment          ❒ Information          ❒ Superseding Information          ☑ Complaint
❒ Probation Violation Petition          ❒ Supervised Release Violation Petition          ❒ Violation Notice          ❒ Order of the Court

This offense is briefly described as follows:

Counts 1-6:Title 18 U.S.C. § 1344 Bank Fraud, and Counts 7-9: Title 18 U.S.C. § 1028(a)(1) Aggravated identity theft

Date:  June 30, 2022

_____
*Issuing officer's signature*

David W. Christel

City and state:   Tacoma, Washington

~~Theresa L. Fricke~~, United States Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |

_____
*Arresting officer's signature*

_____
*Printed name and title*

USAO # 2019R01062

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# CHARGES AND PENALTIES

**Jul 08, 2022**

SEAN F. McAVOY, CLERK

**CASE NAME:** U.S. vs. Brian J. Davie      **CASE NO.** 1:22-MJ-4119-ACE

TOTAL # OF COUNTS: ___9___   ☑ FELONY   ☐ MISDEMEANOR   ☐ PETTY OFFENSE

| Count | Statute | Description of Offense | Penalty |
|-------|---------|------------------------|---------|
| 1-6 | 18 U.S.C. § 1344 | Bank Fraud | CAG NMT 30 years; $1,000,000 fine, or twice the pecuniary gain and/or loss or both; up to 5 years supervised release; and a $100.00 special assessment. |
| 7-9 | 18 U.S.C. § 1028(a)(1) | Aggravated Identity Theft | CAG 2 years in custody consecutive to the underlying offense. |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,           )
                                    )   MJ- 1:22-4119-ACE-1
                    Plaintiff,      )   _____
                                    )
v.                                  )   WAIVER OF RULE 5 HEARINGS
                                    )
Brian J. Davie                      )
_____,          )
                                    )
                                    )
_____ Defendant.        )

     The undersigned defendant does hereby acknowledge:  I appeared
on this date in the Eastern District of Washington, was advised of
the charge(s) pending against me in the prosecuting district, and
was informed of my rights to:

     (1) remain silent, knowing that if I make a statement, it can be
used against me; (2) retain counsel or have counsel appointed for
me; (3) an identity hearing to determine if I am the person sought
by the prosecuting district; and (4) plead guilty to the charge in
this district, if I and the United States Attorneys in this district
and in the requesting district agree.

     If this matter is proceeding by **COMPLAINT**:

     **I WAIVE (GIVE UP) MY RIGHT TO A(N)**

     (☒) identity hearing in this district
     (☒) preliminary examination in this district
     (☐) detention hearing in this district

     If this matter is proceeding by **INDICTMENT**:

     **I WAIVE (GIVE UP) MY RIGHT TO A(N)**

     (☐) identity hearing in this district
     (☐) detention hearing in this district

WAIVER OF RULE 5 HEARINGS - 1

If this matter is proceeding by **PETITION**:

**I WAIVE (GIVE UP) MY RIGHT TO A(N)**

( ) identity hearing in this district
( ) preliminary hearing in this district
( ) detention hearing in this district

If this matter is proceeding by **WARRANT**:

**I WAIVE (GIVE UP) MY RIGHT TO A(N)**

( ) identity hearing in this district
    detention hearing in this district

and, therefore, consent to the issuance of an order requiring my appearance in the prosecuting district where the charge is pending against me.

As to those hearings which are waived in this district, other than the identity hearing, I **RESERVE** the right to have those hearings in the prosecuting district.

_____
Defendant

_7/11/22_____         _____
Date                            Defense Counsel   23464

Interpreted by (if applicable):

_____
(Sign and Print Name)

WAIVER OF RULE 5 HEARINGS - 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,      )
                               )     No.  1:22-MJ-04119-ACE-1
            Plaintiff,         )
                               )     Defendant's Assertion of Fifth and
      vs.                      )     Sixth Amendment
                               )
Brian J. Davie,                )
                               )
            Defendant.         )
_____)

TO:    VANESSA R. WALDREF, UNITED STATES ATTORNEY

       I, the above-named defendant, hereby assert my rights under the Fifth and Sixth Amendments of

the United States Constitution, including but not limited to my rights to remain silent and to have

counsel present at any and all of my interactions with the government or others acting on the

government's behalf.   I do not wish to, and will not, waive any of my constitutional rights except in the

presence of counsel.   I do not wish to have, nor do I consent to, any contact with any government

official, including but not limited to law enforcement agents, except through my counsel.   I do not want

the government or others acting on the government's behalf to question me, or to contact me seeking a

waiver of any rights, unless my counsel is present. The Government should so instruct its agents.



_____          Date  7/11/22
Interpreter Signature



_____          Defendant Signature
Interpreter Printed Name

Defendant's Assertion of
Fifth and Sixth Amendment Rights

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

Brian J. Davie,

              Defendant's Printed Name.

No. 1:22-MJ-04119-ACE-1

ACKNOWLEDGMENT OF NOTICE
OF RIGHTS - FED.R.CRIM.P. 5
(Complaint or Indictment)

The undersigned defendant does hereby acknowledge: I appeared on this date and was advised as follows:

1. Of the charge or charges placed against me, and I acknowledge receipt of a copy of the:

    [X] Complaint
    [ ] Indictment

which specifically sets forth the allegations;

2. That I have been advised of the maximum penalty provided by law;

3. My right to remain silent at all times and if I make a statement it can be used against me;

4. My right to retain my own counsel; and if I am without funds, to have counsel appointed to represent me in this district and the requesting district;

ACKNOWLEDGMENT OF NOTICE OF RIGHTS - Page 1

5. My right to a preliminary examination hearing, if charged by Complaint, before a United States Magistrate Judge and to have counsel present at that hearing, or waive this hearing in writing;

6. My right to a jury trial before a United States District Judge, to be confronted by the United States' witnesses, and have witnesses attend on my behalf;

7. My right to state in writing a wish to plead guilty or nolo contendre, to waive trial in the district in which the Indictment is pending, and to consent to disposition of this case in this district, *subject* to the approval of the United States Attorney for the charging district and this district;

8. My right to an identity hearing to ascertain if I am the person named in the charging document or to waive this hearing in writing;

9. My right to a detention hearing within three business days, if the United States moves for detention, and to be represented by counsel at that hearing;

10. My right, if I am not a United States citizen, to request a Government attorney or law enforcement official notify my country's consulate of my arrest or detention.

_____          Date: ___7/11/22___

Interpreter Signature

_____          _____

Interpreter Printed Name                         Defendant Signature

ACKNOWLEDGMENT OF NOTICE OF RIGHTS - Page 2

# United States District Court, Eastern District of Washington
## Magistrate Judge Alexander C. Ekstrom
### Yakima

**USA v.  BRIAN J. DAVIE**            **Case No.    1:22-MJ-4119-ACE-1**

**Rule 5 Initial Appearance on Complaint for Violation and**            **07/11/2022**
**Detention Hearing:**

---

| | | | | |
|---|---|---|---|---|
| ☒ | Pam Howard, Courtroom Deputy [Y] | | ☒ | Matthew Stone, US Atty |
| | | | ☒ | Jennifer Barnes, Defense Atty |
| ☒ | Erica Helms, US Probation / Pretrial Services Officer | | ☒ | Interpreter **NOT REQUIRED** |
| ☒ | Defendant present in custody USM | | | |

---

| | | | | |
|---|---|---|---|---|
| ☒ | USA Oral Motion for Detention | | ☒ | Rights given |
| ☐ | USA not seeking detention | | ☒ | Acknowledgment of Rights filed |
| ☒ | Financial Affidavit (CJA 23) filed | | ☒ | Defendant received copy of charging document |
| ☒ | The Court will appoint the Federal Defenders | | ☒ | Defendant waived reading of charging document |
| ☐ | Based upon conflict with Federal Defenders, the Court will appoint a CJA Panel Attorney | | ☐ | Charging document read in open court |
| ☐ | Conditions of Release Imposed | | ☐ | Pre-Trial Services Report ordered |
| ☐ | 199C Advice of Penalties/Sanctions | | ☒ | Waiver of Rule 5 Hearings filed |
| ☐ | Ordered Release on Personal Recognizance; 199C Not Required | | ☒ | Court Ordered Removal to Charging District |

## REMARKS

Defendant appeared and was assisted by counsel and advised of their rights and the allegations contained in the charging document.

The Defendant acknowledged to the Court that their true and correct name is: BRIAN J. DAVIE. Not guilty pleas entered on behalf of the Defendant.

**Detention Hearing**:

USA argues Defendant is a risk of non-appearance due to texts sent to Defendant's daughter and FTA's on pending state cases and a danger due to threats made to people and DUIs.

Defense argues this Defendant has misdemeanor criminal history.  Defense argues there is some question about the noted FTA's as no warrants were issued.  Defense provides Defendant's explanations as to the state charges.  Defense advised Defendant has a place to reside, family support and had not fled even though he knew about the impending charges.

Defense counsel proposes conditions of release.

Discovery to be provided.

## The Court ordered:

1. Defendant is a risk of non-appearance and a danger to the community.
2. Defendant shall be detained by the U. S. Marshal for REMOVAL of Defendant to the charging district.

---

Digital Recording/Y-102            Time:  1:45 p.m. – 2:09 p.m.            Page 1

| **Identity Hrg:** | *Waived by Defendant* |
|---|---|
| **Preliminary Hrg:** | *Waived by Defendant* |

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 11, 2022

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:22-MJ-4119-ACE-1 |
| Plaintiff, | ORDER OF REMOVAL |
| v. | (FED. R. CRIM. P. 5) |
| BRIAN J. DAVIE, | **USMS ACTION REQUIRED** |
| Defendant. | ECF No. 9 |

On Monday, July 11, 2022, Defendant made an initial appearance on a Complaint (ECF No. 1) issued in the Western District of Washington, pursuant to Federal Rule of Criminal Procedure 5. Defendant was represented by Assistant Federal Defender Jennifer Barnes. Assistant United States Attorney Matthew Stone represented the United States.

Defendant was advised of and acknowledged his rights.

The Office of the Federal Defenders was appointed to represent Defendant.

Defendant, personally and through counsel, waived his right to an identity hearing and preliminary hearing. *See* ECF No. 4.

///

ORDER - 1

The United States orally sought detention, ECF No. 9, and Defendant requested a detention hearing. No party objected to holding the hearing immediately, and the Court then held a detention hearing.

The United States, in seeking Defendant's detention, contended Defendant, if released, would present a risk of flight and a danger to the safety of the community. Both sides presented argument.

The Court evaluated the four factors outlined in 18 U.S.C. § 3142(g) to determine whether there are conditions of release that would reasonably assure Defendant's appearance in court and the safety of the community: (1) the nature and circumstances of the offense; (2) the weight of evidence against Defendant; (3) the history and characteristics of Defendant; and (4) the nature and seriousness of the danger Defendant would present to the community if released. The Court finds that these factors, as set forth orally by the Court, weigh in favor of Defendant's detention.

Based on the Pretrial Services Report and proffer of the parties, the Court finds the United States has established by the required preponderance of evidence an absence of conditions or combination of conditions that would reasonably assure this Defendant's presence at trial and has established by clear and convincing evidence that Defendant poses a present risk to the safety of other persons or the community.

ORDER - 2

Accordingly, **IT IS ORDERED:**

1.     The United States' Motion for Detention, **ECF No. 9**, is **GRANTED**.

2.     Defendant is committed to the custody of the United States Marshal for detention until further order of the Court, and for removal as soon as reasonably possible to the Western District of Washington.

3.     Defendant shall be made reasonably available for communication with court-appointed counsel.

4.     Until counsel is appointed in the charging District, all notices shall be sent to the Federal Defenders of Eastern Washington, 306 East Chestnut Ave., Yakima, WA 98901.

5.     The Court directs the parties to review the Local Criminal Rules governing discovery and other issues in this case. http://www.waed.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Under federal law, including Rule 5(f) of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and all applicable decisions from the Supreme Court and the Ninth Circuit interpreting *Brady*, the United States has a continuing obligation to produce all information or evidence known to the United States relating to guilt or punishment that might reasonably be considered favorable to Defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence. *See United States v. Price*, 566

ORDER - 3

F.3d 900, 913 n.14 (9th Cir. 2009). Accordingly, the Court orders the United

States to produce to Defendant in a timely manner all such information or

evidence.

Information or evidence may be favorable to a defendant's case if it either

may help bolster the defendant's case or impeach a prosecutor's witness or other

government evidence. If doubt exists, it should be resolved in favor of Defendant

with full disclosure being made.

If the United States believes that a required disclosure would compromise

witness safety, victim rights, national security, a sensitive law-enforcement

technique, or any other substantial government interest, the United States may

apply to the Court for a modification of the requirements of this Disclosure Order,

which may include *in camera* review and/or withholding or subjecting to a

protective order all or part of the information.

This Disclosure Order is entered under Rule 5(f) and does not relieve any

party in this matter of any other discovery obligation. The consequences for

violating either this Disclosure Order or the United States' obligations under *Brady*

include, but are not limited to, the following: contempt, sanction, referral to a

disciplinary authority, adverse jury instruction, exclusion of evidence, and

dismissal of charges. Nothing in this Disclosure Order enlarges or diminishes the

United States' obligation to disclose information and evidence to a defendant under

ORDER - 4

*Brady*, as interpreted and applied under Supreme Court and Ninth Circuit

precedent. As the Supreme Court noted, "the government violates the

Constitution's Due Process Clause 'if it withholds evidence that is favorable to the

defense and material to the defendant's guilt or punishment.'" *Turner v. United*

*States*, 137 S. Ct. 1885, 1888 (2017) (quoting *Smith v. Cain*, 565 U.S. 73, 75

(2012)).

**IT IS SO ORDERED.**

DATED July 11, 2022.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER - 5